# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **RODNEY W. BIGGS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-08-S-1257-NE** |
| | ) | |
| **ALEX MCCARVER, *et al.,*** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Rodney Biggs, asserts a claim against defendant Alex McCarver, a police officer for the City of Huntsville, Alabama, pursuant to 42 U.S.C. § 1983 for an alleged unlawful arrest and unlawful search and seizure in violation of the Fourth Amendment to the United States Constitution.[1]  He also asserts supplemental state law claims for false imprisonment and malicious prosecution against both McCarver and the City of Huntsville ("the City").[2]  The case currently is before the court on separate summary judgment motions filed by McCarver and the City.[3]  Upon consideration of those motions, the pleadings, the parties' briefs, and the evidence of

---

[1] Doc. no. 34 (Amended Complaint), at Count I.

[2] *Id.* at Count II and Count III.  Plaintiff's original complaint also asserted claims against Jesse Baker and Joseph Wheeler, both of whom are police officers for the City.  *See* doc. no. 1 (Complaint).  Those claims were dismissed, upon plaintiff's consent, in an order dated September 24, 2008.  Doc. no. 24.

[3] Doc. no. 37 (Motion for Summary Judgment by Defendant City of Huntsville, Alabama); doc. no. 38 (Motion For Summary Judgment by Defendant Alex McCarver).

record, the court concludes that both motions for summary judgment are due to be granted.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  Inferences in favor of the non-moving party are not unqualified, however.  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary
> judgment unless that factual dispute is *material* to an issue affecting the
> outcome of the case.  The relevant rules of substantive law dictate the
> materiality of a disputed fact.  A genuine issue of material fact does not
> exist unless there is sufficient evidence favoring the nonmoving party
> for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis supplied).

*See also Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986) (asking

"whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law").

## II. SUMMARY OF FACTS

Plaintiff, Rodney Biggs, resides in an apartment in Huntsville, Alabama.  The

apartment consists of one bedroom, one bathroom, and a joined den/kitchen area.[4]

Richard Waller lived in the apartment directly above  plaintiff's. Waller had to pass

by the door of plaintiff's apartment in order to reach his own entry door.[5]

Prior to May 13, 2007, Waller had noticed the odor of marijuana coming from

an unidentified neighbor's apartment on approximately three to five occasions.[6]  On

at least one of those occasions, Waller informed defendant Alex McCarver about the

smell.  McCarver told Waller to call the Huntsville Police Department whenever he

---

[4] Defendants' evidentiary submission, Exhibit A (Deposition of Rodney Biggs), at 84-85.

[5] Defendants' evidentiary submission, Exhibit D (Affidavit of Richard Waller), at ¶¶ 2-3.

[6] There is no evidence that Waller identified the neighbor as plaintiff on any of these prior
occasions.

again smelled marijuana smoke coming from a neighbor's apartment.[7]   On the evening of May 13, 2007, when Waller returned home from work, he again smelled the odor of marijuana coming from a neighboring apartment.  The odor was so strong that Waller could even smell it from inside his own apartment.[8]    Within approximately five minutes of his arrival home, Waller left his apartment to speak to McCarver, who was on duty in his patrol car at a gas station near the apartment complex.  Waller told McCarver that his downstairs neighbor was smoking marijuana again.[9]

McCarver followed Waller back to the apartment complex, where Waller directed McCarver to plaintiff's apartment door and informed him that the marijuana smell had originated from plaintiff's apartment.[10]   McCarver knocked on plaintiff's door at approximately 8:00 p.m., and plaintiff opened the door voluntarily, without being commanded or coerced.[11]   McCarver did not tell plaintiff he had a search

---

[7] *Id.* at ¶ 5; *see also* defendants' evidentiary submission, Exhibit B (Deposition of Alex McCarver), at 8-9.

[8] Waller Affidavit, at ¶ 4.

[9] *Id.* at ¶ 6.

[10] *Id.* at ¶¶ 6-7.

[11] McCarver Deposition, at 12; Biggs Deposition, at 84-85; defendants' evidentiary submission, Exhibit C (Affidavit of Alex McCarver), at 5.  In plaintiff's deposition, he repeatedly stated that the police officer who came to his door on the evening of May 13, 2007 was Officer Baker, not Officer McCarver.  *See* Biggs Deposition, at 85-101, 105-108, 115, 125-26.  Defendant maintains that plaintiff was mistaken as to the officer's identity, and that plaintiff should have been referring to Officer McCarver.  Plaintiff does not appear to dispute this point.  Indeed, although plaintiff originally named Officer Jesse Baker as a defendant in this case, he subsequently agreed to

warrant before plaintiff opened the door.[12]  As soon as plaintiff opened the door, McCarver detected a strong order of burnt marijuana, but he does not recall whether he saw any smoke particles in the air.[13]  McCarver recognized the "distinctive" odor of burnt marijuana based upon his law enforcement experience.  Specifically, McCarver attended the Montgomery Police Academy in 1999, where he received training on how to recognize controlled substances, including the odor of burnt marijuana.  Further, McCarver has smelled the odor of burnt marijuana on numerous occasions during his ten-year law enforcement career, and he has made eleven arrests for possession of marijuana.[14]

Plaintiff admits to having smoked marijuana in his apartment earlier that day. He even admits to smoking marijuana on a regular basis, approximately two or three days each week, to counteract the nervousness and anxiety he experiences as a result of schizophrenia and bipolar disorder.[15]  Plaintiff disputes, however, that anyone, including Weller and McCarver, would have been able to smell marijuana in his apartment, because he had not smoked for several hours before McCarver entered,

---

the dismissal of all claims against Baker (*see* doc. no. 23), and he filed an amended complaint that named only McCarver and the City of Huntsville as defendants (doc. no. 34).  Accordingly, the court will assume that all references in plaintiff's deposition to Officer Baker should, in reality, be taken as references to Officer McCarver.

[12] McCarver Affidavit, at ¶ 5.

[13] McCarver Deposition, at 12-15.

[14] McCarver Affidavit, at ¶ 7.

[15] Biggs Deposition, at 113-16, 170-75.

because cooking odors should have covered up the smell, and because the apartment walls are too "solid" to allow the odor to seep through.[16]  In fact, plaintiff claims that Waller fabricated all the reports about plaintiff smoking marijuana because he and plaintiff did not get along.[17]

After McCarver opened plaintiff's apartment door, he told plaintiff that he had received a complaint of drug use in the area, and that he smelled marijuana in the apartment.  McCarver asked plaintiff if he had been doing any drugs, and plaintiff said he had not.[18]  McCarver also asked plaintiff if he could come inside to look around, but plaintiff refused because McCarver did not have a warrant.  Plaintiff then closed his door quickly and retreated into his apartment.[19]  McCarver almost immediately kicked the door open and entered the apartment.[20]  McCarver testified that he believed it was necessary to enter the apartment in order to prevent any drugs or other evidence from being destroyed or removed.[21]

After entering the apartment, McCarver handcuffed plaintiff in order to secure him and to determine whether anyone else was in the apartment.  McCarver did this

---

[16] *Id.* at 82, 167-68, 176-77.

[17] *See* Biggs Deposition, at 63-79.

[18] McCarver Deposition, at 12.

[19] Biggs Deposition, at 91-96; McCarver Deposition, at 11-12; McCarver Affidavit, at ¶ 8.

[20] Biggs Deposition, at 98-100; McCarver Deposition, at 12; McCarver Affidavit, at ¶ 9.

[21] McCarver Affidavit, at ¶ 9.

to protect both his own and plaintiff's safety.[22]  Plaintiff testified that McCarver told him he was under arrest,[23] but McCarver testified that he did not tell plaintiff he was under arrest, and he did not read plaintiff his *Miranda* rights.[24]  McCarver asked plaintiff where the drugs were, and plaintiff told him that he had some prescription drugs in the bedroom and some marijuana in a drawer in the living area.[25]  McCarver opened the drawer and found some marijuana and a glass pipe, both of which plaintiff admitted were his.[26]  McCarver also found at least three prescription drug bottles in plaintiff's apartment.  Two of the bottles were unlabeled, and they did not have plaintiff's name on them.  Plaintiff told McCarver that he needed to take his medication at night, and McCarver knew that the jail would not immediately accept medication that was not labeled or prescribed to an arrestee.  Consequently, McCarver decided to release plaintiff and leave the apartment in order to obtain warrants for plaintiff's arrest instead of taking plaintiff into custody that night.  He did this as a courtesy to plaintiff, so that plaintiff would not have to go to jail without his medication.[27]

---

[22] McCarver Deposition, at 15-16; McCarver Affidavit, at ¶ 10.

[23] Biggs Deposition, at 97-99.

[24] McCarver Deposition, at 16.

[25] Biggs Deposition, at 101-07; McCarver Deposition, at 12; McCarver Affidavit, at ¶ 11.

[26] Biggs Deposition, at 100-01, 107-12; McCarver Deposition, at 12, 17-20; McCarver Affidavit, at ¶ 11.

[27] Biggs Deposition, at 117-20, 123-25; McCarver Deposition, at 21-22; McCarver Affidavit,

McCarver later obtained two warrants for plaintiff's arrest:  one for possession of marijuana and one for possession of drug paraphernalia.[28]  On May 21, 2007, plaintiff went to the police station and turned himself in on both warrants.[29]  He was placed in a holding cell, but he made bail and was released later that same day.[30]  After several delayed trial settings, the charges against plaintiff were *nolle prossed* on April 28, 2008, because the arresting officer (McCarver) did not show up for court.[31]

## III. DISCUSSION

### A.   Fourth Amendment Claims

Plaintiff claims that McCarver subjected him to an illegal search and an illegal arrest, both of which allegedly were in violation of rights guaranteed him by the Fourth Amendment to the United States Constitution.[32]  McCarver claims that he is

---

at ¶ 13.

[28] *See* McCarver Affidavit, at ¶ 13; defendants' evidentiary submission, at Exhibit J (Arrest Report), Exhibit M (criminal complaints against plaintiff).

[29] Biggs Deposition, at 152-53.

[30] *Id.* at 158; *see also* defendants' evidentiary submission, at Exhibit J (Arrest Report, indicating that plaintiff was released on May 21, 2007).

[31] Defendants' evidentiary submission, at Exhibit M.  *See also* McCarver Deposition, at 24-25.

[32] Plaintiff sued McCarver in his individual capacity only. *See* Amended Complaint, at ¶ 9 ("Defendant McCarver is sued in his individual capacity.").  The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

entitled to the protection of qualified immunity from those claims.

The doctrine of qualified immunity protects governmental officials who are sued under 42 U.S.C. § 1983 for money damages in their personal, or individual, capacities, but only so long as "their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts generally apply a two-part test for evaluating whether a defendant is entitled to qualified immunity. The "threshold question" for the district court to ask is whether the facts, viewed "in the light most favorable to the party asserting the injury," show that "the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).[33] If the threshold

---

particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

[33] The defendant claiming immunity must also "prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)). Here, plaintiff argues that McCarver was not acting within his discretionary authority when he searched plaintiff's apartment, because a police officer lacks authority to effect a misdemeanor arrest without a warrant unless the arrestee commits the offense in the officer's presence. The Eleventh Circuit has clearly held, however, that

> [t]he inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an "untenable" tautology. *See Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir. 1992); *Shechter v. Comptroller of New York*, 79 F.3d 265, 269 (2d Cir. 1996). "Instead, a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties. The scope of immunity 'should be determined by the relation of the [injury] complained of to the duties entrusted to the officer.' " *In re Allen*, 106

question is answered positively, the court will proceed to analyze the second aspect

of the two-part inquiry: *i.e.,* "whether the right was clearly established." *Id.*[34]

### 1.    Unlawful search

Plaintiff's amended complaint alleges that, "[u]nder the Fourth Amendment to

the Constitution of the United States, every citizen has the right not to be subjected

to an unreasonable search of one's home or dwelling," and that "[u]nder the facts in

this case, the Defendant Alex McCarver intentionally subjected Rodney Biggs to an

unreasonable search of his home."[35]   In his brief, plaintiff argues that the unlawful

search occurred when McCarver entered his home without a warrant.

"It is a 'basic principle of Fourth Amendment law' that searches and seizures

_____

F.3d [582,] 594 [(4th Cir. 1997)] (quoting *Doe v. McMillan*, 412 U.S. 306, 319-20, 93 S.Ct. 2018, 2028, 36 L.Ed.2d 912 (1973)).

*Harbert International, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998).  Following up on a complaint of drug use, searching a suspect's apartment, and detaining the suspect if necessary all are within the "outer perimeter" of a police officer's duties.  Therefore, McCarver clearly was acting within his discretionary authority during all of the events about which plaintiff complains.  Even if the court were to find that McCarver was *not* acting within his discretionary authority, however, that finding would not be determinative, because, as will be discussed *infra,* plaintiff has not demonstrated that a violation of the Fourth Amendment occurred.

[34] The Supreme Court recently relieved lower courts from mandatory adherence to the order of the two-part analysis articulated in *Saucier*.  *See Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 818 (2009) ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.").  It is now within this court's discretion to, in appropriate cases, assume that a constitutional violation occurred for the purpose of addressing, in the first instance, whether such a violation would be "clearly established."  *Id.*  That said, and under the circumstances of the present case, the tested sequence of analysis of *Saucier* will be followed.

[35] Amended Complaint, at ¶¶ 52-53.

-10-

inside a home without a warrant are presumptively unreasonable." *Payton v. New York,* 445 U.S. 573, 586 (1980). "A warrantless search is allowed, however, where both probable cause and exigent circumstances exist." *United States v. Tobin,* 923 F.2d 1506, 1510 (11th Cir. 1991) (citing *United States v. Burgos,* 720 F.2d 1520, 1525 (11th Cir. 1983)). McCarver asserts that both probable cause and exigent circumstances existed to justify his warrantless entry into plaintiff's apartment.

### a.    Probable cause

> Probable cause exists [to justify a warrantless search] when under the "totality-of-the-circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). In other words, probable cause exists "where the facts lead a reasonably cautious person to believe that the 'search will uncover evidence of a crime.'" *United States v. Burgos*, 720 F.2d at 1525 (quoting *United States v. Rojas*, 671 F.2d 159, 165 (5th Cir. Unit B 1982)).

*Tobin,* 923 F.2d at 1510. Here, probable cause existed for McCarver to enter the apartment once plaintiff opened the door and McCarver smelled burnt marijuana.[36] The Eleventh Circuit has repeatedly held that there is probable cause to search a home when an experienced law enforcement officer smells the odor of marijuana coming from within. *See, e.g., Tobin,* 923 F.2d at 1512 (citing *United States v. Lueck,* 678

---

[36] Plaintiff makes no argument regarding McCarver's knock on his door, or his decision to open the door. The court concludes that no valid legal objection could be made to either of these actions, as the record reflects that plaintiff's opening of the door was completely voluntary.

F.2d 895, 903 (11th Cir. 1982)) ("There is no doubt that the agent's suspicions rose to the level of probable cause when, as the door stood open, he detected what he knew from his law enforcement experience to be the odor of marijuana."); *see also, e.g., United States v. Hamilton,* 299 Fed. Appx. 878, 882 (11th Cir. 2008) ("We have held that 'the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search.'") (quoting *Lueck*, 678 F.2d at 903).

Plaintiff's arguments to the contrary are unavailing.  Plaintiff first asserts that McCarver could not possibly have smelled marijuana coming from his apartment. However, plaintiff's conclusory assertion about what McCarver should have been able to smell is not sufficient, without any supporting evidence, to refute McCarver's clear testimony that he smelled marijuana.  Plaintiff does not explain, or offer any proof to support, his assertions that cooking smells or the passage of several hours since he smoked his last joint would eliminate the odor of marijuana in an apartment where the substance was used on a regular basis and, indeed, had already been used several times that same day.

Plaintiff also argues that, in Alabama, a police officer lacks authority to effect a misdemeanor arrest without a warrant unless the arrestee commits the offense in the officer's presence.[37]  This argument misses the point because, even if McCarver's

---

[37] Plaintiff's argument centers upon Alabama Code § 15-10-3, which states, in pertinent part, that "[a]n officer may arrest a person without a warrant, on any day and at any time . . .[i]f a public

arrest of plaintiff was in violation of Alabama law, it does not follow that the arrest

violated plaintiff's federal Fourth Amendment rights.  As the Eleventh Circuit has

held,

> Section 1983 does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right. *See Paul v. Davis*, 424 U.S. 693, 698-99, 96 S. Ct. 1155, 1159, 47 L. Ed.2d 405 (1976). There is no federal right not to be arrested in violation of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (holding that federal law, not state law, determines the validity of arrests under the Fourth Amendment); *Fields v. City of South Houston*, 922 F.2d at 1183, 1189 (5th Cir. 1991) (same); *Barry v. Fowler*, 902 F.2d at 770, 772 (9th Cir. 1990) (same); *McKinney v. George*, 726 F.2d 1183, 1188 (7th Cir. 1984) (same); *Street v. Surdyka*, 492 F.2d 368, 370-73 (4th Cir. 1974) (same). While the violation of state law may (or may not) give rise to a state tort claim, it is not enough by itself to support a claim under section 1983. *See Barry*, 902 F.2d at 773 ("While Barry may have a remedy under state law [for the warrantless arrest], she has failed to allege a federal constitutional or federal statutory violation"); *Diamond v. Marland*, 395 F. Supp. 432, 439 (S.D. Ga. 1975) ("Even if a police officer violates a state arrest statute, he would not be liable under [§ 1983] unless he also violated federal constitutional law governing warrantless arrests."); *see also Paul v. Davis*, 424 U.S. at 699, 96 S. Ct. at 1159 (rejecting the argument that "every legally cognizable injury which may have been inflicted by a state official acting 'under color of law' establish[es] a violation of the Fourteenth Amendment"); *Lovins v. Lee*, 53 F.3d 1208, 1210-1211 (11th Cir. 1995) (holding that while the plaintiff may have a claim under state law against defendants because they acted contrary to state law in releasing an inmate who harmed her, that violation of state law did not

---

offense has been committed or a breach of the peace threatened in the presence of the officer." Ala. Code § 15-10-3(a)(1).  Plaintiff asserts that he committed no offense in McCarver's presence, because McCarver never actually saw him using marijuana.  While true, that fact is of no consequence, because McCarver smelled marijuana smoke and thus had probable cause to enter plaintiff's apartment.

give her a federal constitutional claim).

*Knight v. Jacobson,* 300 F.3d 1272, 1275-76 (11th Cir. 2002).

### b.   Exigent circumstances

McCarver also argues that exigent circumstances existed to justify the warrantless search of plaintiff's apartment as soon as McCarver told plaintiff that there had been a complaint of drug use in the area and that he smelled marijuana in plaintiff's apartment. According to McCarver, because plaintiff knew that McCarver suspected him of illegal marijuana use, plaintiff easily could have destroyed any marijuana he had in his possession if McCarver had left the apartment to obtain a search warrant.

Eleventh Circuit case law supports McCarver's argument. "The term 'exigent circumstances' refers to a situation where the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." *Burgos,* 720 F.2d at 1526. The Eleventh Circuit, in an unpublished (and, therefore, non-binding, but still persuasive) opinion, has stated the following with regard to the existence of exigent circumstances in drug cases:

> Exigent circumstances may exist where there is a danger that evidence will be destroyed or removed. [*Tobin,* 923 F.2d at 1510]. However, "the presence of contraband without more does not give rise to exigent circumstances," but such circumstances may arise where there is a danger that the contraband will be destroyed. *Id.* (quotation omitted).

-14-

> "This Court has held that the need to invoke the exigent circumstances exception to the warrant requirement is particularly compelling in narcotics cases because narcotics can be so quickly destroyed." *Id.* (quotation omitted). In determining whether exigent circumstances existed, we employ the following objective test: "whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured." *United States v. Young*, 909 F.2d 442, 446 (11th Cir. 1990).

*United States v. Floyd,* 247 Fed. Appx. 161, 166 (11th Cir. 2007).

More specifically, the Eleventh Circuit *has* held in a an opinion that is binding authority that the danger of destruction of drug evidence rose to the level of "exigent circumstances" when the occupants of a house at which a warrantless search was being conducted were aware that the officers suspected drug use in the house. *See Tobin,* 923 F.2d at 1512 (holding that, when "the defendants and anyone else who might have been present in the house would have been aware of the agent's suspicions," the "[d]anger that the defendants or someone else inside the house might destroy the evidence . . . provided the exigent circumstances required to justify a warrantless search").

Accordingly, the court concludes that exigent circumstances existed to support McCarver's warrantless search.  None of plaintiff's contrary arguments affects that conclusion.  For example, plaintiff asserts that "[c]ircumstances are not normally

considered exigent where the suspects are unaware of police surveillance."[38]  While

that is a correct statement of Eleventh Circuit law, *see Tobin,* 923 F.2d at 1511, it is

clear that, in this case, plaintiff *was* aware of both McCarver's presence and his

suspicion of marijuana use.

Plaintiff next argues that McCarver is not entitled to claim an exception to the

warrant requirement because he created the exigent circumstances that allegedly

justified his warrantless entry into plaintiff's apartment by unnecessarily making

known to plaintiff his presence and the purpose of his search.  It is true that "a

warrantless search is illegal when police possess probable cause but instead of

obtaining a warrant create exigent circumstances." *Tobin,* 923 F.2d at 1511 (citations

omitted).  Here, however, it cannot be said that McCarver unnecessarily created the

exigent circumstances that allegedly justified his warrantless search of plaintiff's

apartment.  Plaintiff has cited no authority to support his suggestion that McCarver

should not have knocked on plaintiff's door, should not have informed him that he

was investigating a complaint of marijuana use, or should not have asked whether he

could enter the apartment.  To the contrary, in the very case plaintiff cites to support

his argument, the court found that exigent circumstances existed to justify a

warrantless arrest when agents approached a house which they suspected was being

---

[38] Doc. no. 46 (plaintiff's brief), at 23.

used for illegal drug activity, knocked on the door, identified themselves as police officers, and informed the occupants of the house that they suspected someone had stored cocaine in the garage. *See Tobin,* 923 F.2d at 1508.

Finally, plaintiff asserts that McCarver's belief that exigent circumstances existed was not "objectively reasonable."[39]  Plaintiff appears to base that argument on the facts that he did not react frantically to McCarver's presence or inquires, that he did not resist arrest, that McCarver did not actually observe plaintiff attempting to destroy evidence, and that plaintiff's crimes (possession of marijuana and drug paraphernalia) were only "minor" offenses.  Those facts are supported by the record, but they are not dispositive.  As discussed above, the Eleventh Circuit has found exigent circumstances when the occupants of a house at which a warrantless search was conducted were aware that the officers suspected drug use in the house. *See Tobin,* 923 F.2d at 1512.

In summary, the court finds that both probable cause and exigent circumstances were present when McCarver conducted a warrantless search of plaintiff's apartment. Accordingly, the search did not violate the Fourth Amendment.

### 2.     Unlawful arrest

For his Fourth Amendment unlawful arrest claim, plaintiff states that "[u]nder

---

[39] Plaintiff's brief, at 27.

the Fourth Amendment to the Constitution of the United States, every citizen has the right not to be deprived of liberty and the right not to be arrested without due process of law," and that "the Defendant Alex McCarver intentionally arrested and deprived Rodney Biggs of his liberty without due process of law."[40]

To establish a violation of the Fourth Amendment when making an arrest, the plaintiff must show that the arrest was unreasonable. *See*, *e.g.*, *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989) ("Seizure alone is not enough for § 1983 liability; the seizure must be unreasonable.") (internal quotation marks and citation omitted). An arrest is unreasonable when it is not supported by probable cause. *See*, *e.g.*, *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). "Probable cause is defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Id*. (citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)). Courts have recognized that "[t]he probable-cause standard [often] is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). *See also Illinois v. Gates*, 462 U.S. 213, 232 (1983) ("[P]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even

---

[40] Complaint, at ¶¶ 51, 54.

usefully, reduced to a neat set of legal rules."). The best that can be said is this: probable cause to effect an arrest exists if, at the moment the arrest was made, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the person arrested either had committed, or was in the process of committing, an offense. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). *See also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.").

Therefore, "[t]o determine whether an officer had probable cause to arrest an individual, [courts] examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Pringle*, 540 U.S. at 371 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).

At the same time, courts must refer to the elements of the charge on which a person was arrested, because the question of "[w]hether a particular set of facts gives rise to probable cause . . . to justify an arrest for a particular crime depends, of course, on the elements of the crime." *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004).

Although it is not entirely clear from plaintiff's brief, plaintiff appears to argue that his Fourth Amendment right to be free from unlawful arrest was violated when defendant handcuffed him in his apartment on May 13, 2007, as well as when he turned himself in on charges of possession of marijuana and drug paraphernalia on May 21, 2007.

Plaintiff was charged with possession of marijuana in violation of Alabama Code § 13A-12-214, which states that "[a] person commits the crime of unlawful possession of marihuana in the second degree if, except as otherwise authorized, he possesses marihuana for his personal use only." Ala. Code § 13A-12-214(a) (1975 and 2005 Repl Vol.). Plaintiff also was charged with possession of drug paraphernalia in violation of Alabama Code § 13A-12-260, which states that

> [i]t shall be unlawful for any person to use, or to possess with intent to use, or to use to inject, ingest, inhale or otherwise introduce into the human body, drug paraphernalia or to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain or conceal a controlled substance in violation of the controlled substances laws of this state. Any person who violates this subsection is guilty of a class A misdemeanor and upon conviction shall be punished as prescribed by law.

Ala. Code § 13A-12-260(c) (1975 & Supp. 2009). The term "drug paraphernalia" includes "[o]bjects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marihuana . . . into the human body, such as . . . ceramic

pipes . . . ." Ala. Code § 13A-12-260(a)(12) (1975 & Supp. 2009).

By the time plaintiff turned himself in on May 21, 2007, probable cause clearly existed to support an arrest for both of these offenses. While McCarver was present in plaintiff's apartment on May 13, 2007, plaintiff showed McCarver where the marijuana and pipe were located. He also admitted to owning both the pipe and the marijuana, as well as to using the pipe to smoke the marijuana. Furthermore, and importantly, by the time plaintiff had turned himself in, McCarver had obtained two warrants for his arrest.

Because there was probable cause to support plaintiff's arrest on both charges, plaintiff's false arrest claim — insofar as it relates to the arrest that occurred when he turned himself in on May 21, 2007 — must fail. *See Rankin v. Evans,* 133 F.3d 1425, 1435 (11th Cir. 1998) ("[P]robable cause constitutes an absolute bar to . . . § 1983 claims alleging false arrest.").[41]

Plaintiff also claims that he was unlawfully arrested when McCarver entered

---

[41] Plaintiff also argues that his arrest was illegal because McCarver did not discover the marijuana and pipe through a protective sweep of the apartment, because the marijuana and pipe were not in "plain view," and because plaintiff did not consent to a warrantless search of his apartment. All of these arguments are attempts to demonstrate that the evidence supporting a finding of probable cause for plaintiff's arrest — *i.e.,* the discovery of the marijuana and pipe — cannot be used against plaintiff because it was illegally obtained. Those arguments are irrelevant, as defendant has not attempted to rely on a protective sweep, the "plain view" doctrine, or the consent exception to justify his warrantless search of plaintiff's apartment. Instead, defendant has established that the warrantless search was justified due to the existence of probable cause and exigent circumstances. It therefore is not necessary to determine whether any other exceptions to the warrant requirement apply.

his apartment on May 13, 2007, handcuffed him, and informed him he was arrested. Defendant, on the other hand, claims that those circumstances constituted an investigative detention, rather than an actual arrest.  That distinction is important because an investigative detention must only be supported by an officer's reasonable suspicion of criminal activity, while an arrest must be supported by probable cause, a stricter standard.  *See United States v. Hastamorir,* 881 F.2d 1551, 1556 (11th Cir. 1989)  ("In order to justify a fourth amendment seizure [with regard to an investigative detention], the government must show a reasonable and articulable suspicion that the person has committed or is about to commit a crime.").

"In determining 'when' an investigative stop ripens into an arrest, no bright-line rule exists.  Instead, in determining whether an investigative detention is unreasonable, 'common sense and ordinary human experience must govern over rigid criteria.'" *Hastamorir*, 881 F.2d at 1556 (quoting *United States v. Espinosa-Guerra,* 805 F.2d 1502, 1509 (11th Cir. 1996) (in turn quoting *United States v. Sharpe,* 470 U.S. 675, 685 (1985))).  The court must consider the totality of circumstances, including "the public interest served by the seizure, the nature and scope of the intrusion, and the objective facts relied upon by the officers." *United States v. Blackman,* 66 F.3d 1572, 1576 (11th Cir. 1995) (citing *Courson v. McMillian,* 939 F.2d 1479, 1492 (11th Cir. 1992)).

Here, the mere fact that McCarver placed plaintiff in handcuffs does not transform his detention into a full-scale arrest, requiring a showing of probable cause. *See Blackman,* 66 F.3d at 1576 ("[T]he fact that police handcuff the person or draw their weapons does not, as a matter of course, transform an investigatory stop into an arrest.") (citing *United States v. Kapperman,* 764 F.2d 786, 790 n.4 (11th Cir. 1985); *Hastamorir,* 881 F.2d at 1556). Nor does the fact that McCarver informed plaintiff he was under arrest.[42] *See United States v. Diaz-Lizaraza,* 981 F.2d 1216, 1221 (11th Cir. 1993) ("The character of a seizure as arrest or [investigative] stop depends on the nature and degree of the intrusion, not on whether the officer pronounces the detainee 'under arrest.'") (citing *Dunaway v. New York,* 442 U.S. 200, 212 (1979)); *see also id.* at 1222 ("Mirandizing a detainee does not convert a[n investigative] stop into an arrest.").

Accordingly, this court concludes that McCarver's use of handcuffs and words like "you're under arrest" should not be transformed into "rigid criteria" supporting a "bright-line rule" distinguishing an arrest from an investigative detention. Instead, considering the totality of the circumstances, McCarver's momentary constraint of plaintiff inside his apartment on May 13, 2007 amounted to no more than a temporary detention for the purpose of securing plaintiff and stabilizing the situation so that

---

[42] McCarver denies ever so informing plaintiff, but at this summary judgment stage, all facts must be construed in the light most favorable to plaintiff.

McCarver could question plaintiff and conduct a search of the apartment.  McCarver

testified that it was necessary to handcuff plaintiff while he searched the apartment,

because he needed to secure the premises by making sure that no one else who might

be present in the apartment would interfere with the search.  *See Kapperman,* 764

F.2d at 790 n.4 ("Police may take reasonable action, based upon the circumstances,

to protect themselves during [investigative detentions], or to maintain the status

quo.") (citations omitted); *Hastamorir,* 881 F.2d at 1557 (holding that handcuffing

a suspect during an investigative detention can be "a reasonable action designed to

provide for the safety of the agents").  Furthermore, the detention was relatively brief:

the record indicates that plaintiff was released as soon as McCarver's investigation

was completed, and that plaintiff was not taken into custody until more than a week

later, when he turned himself in to the authorities.

Because the seizure of plaintiff inside his apartment on May 13, 2007 was

merely an investigative detention, and not an arrest, the detention need only have

been supported by a reasonable suspicion of criminal activity in order to satisfy the

Fourth Amendment.  "Reasonable suspicion requires more than a hunch; it requires

that the totality of the circumstances create, at least, some minimal level of objective

justification for the belief that the person engaged in unlawful conduct." *Blackman,*

66 F.3d at 1576 (citing *Diaz-Lizaraza*, 981 F.2d at 1221).  Here, McCarver's

-24-

detection of marijuana smoke, coupled with the report by plaintiff's neighbor that drugs were being used in the apartment, gave McCarver at least a minimal level of objective justification for believing that plaintiff (or someone else in the apartment) had been using marijuana.   Accordingly, McCarver's detention of plaintiff in his apartment on May 13, 2007, was supported by a reasonable suspicion of criminal activity, and it did not violate the Fourth Amendment.   *See United Staes v. Griffin,* 109 F.3d 706, 708 (11th Cir. 1997) (holding that an officer's detection of "a strong odor of marijuana," coupled with the suspects' inconsistent responses to the officers' questioning, provided reasonable suspicion to detain the suspects); *United States v. Simpson,* 259 Fed. Appx. 164, 166 (11th Cir. 2007) (holding that the fact that officers "smelled a strong odor of burning marijuana coming from inside the house[,] coupled with the fact that they were called to the scene to investigate a report that shots were fired, gave the officers reasonable suspicion to detain the occupants of the house").

In summary, there is no evidence to support plaintiff's claim for an unlawful search and an unlawful arrest in violation of the Fourth Amendment to the United States Constitution.[43]   Accordingly, summary judgment is due to be granted on plaintiff's Fourth Amendment claims.

---

[43] Because there is no evidence to support a constitutional violation, the court need not reach the next stage of the qualified immunity analysis, *i.e.,* whether the rights at issue were clearly established at the time of the violation.

**B.      State Law Claims**

The only remaining claims are plaintiff's state law claims against both McCarver and the City of Huntsville for false imprisonment and malicious prosecution.[44]  In cases where the court's jurisdiction is based solely upon a federal question, the district court has discretion to entertain state claims that are supplemental to the federal claim.  *See* 28 U.S.C. § 1367(a).  The district court may decline to exercise supplemental jurisdiction when:

(1)      the claim raises a novel or complex issue of State law,

(2)      the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)      *the district court has dismissed all claims over which it has original jurisdiction*, or

(4)      in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis supplied).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 350 n.7 (1988).

---

[44] *See* Amended Complaint, at Counts II & III.

Here, plaintiff's federal claims have been eliminated.  Accordingly, this court declines supplemental jurisdiction over the remaining state law claims, and exercises its discretion to dismiss those claims.

## IV. CONCLUSION AND ORDER

In consideration of all of the foregoing, both motions for summary judgment are GRANTED.  Plaintiff's claim against defendant Alex McCarver for violation of his Fourth Amendment rights (Count I) is DISMISSED with prejudice.  Plaintiff's supplemental state law claims against defendants Alex McCarver and the City of Huntsville (Counts II & III) are DISMISSED without prejudice.  Costs incurred herein are taxed to plaintiff.  The Clerk of Court is directed to close this file.

DONE this 14th day of January, 2010.

United States District Judge